UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EARL LEWIS                                              :         02 CIV 5568 (SHS)
                Plaintiff,                    :
                                                      :         OPINION AND ORDER
     -against-                                        :
                                                      :
DR. MCGRAW, Mid-Orange Correctional Facility; :
DR. GRIFFIN, Albany, NY                                 :
                                                      :
                Defendants.                   :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

       Pro se plaintiff Earl Lewis, a former inmate at the Mid-Orange Correctional Facility ("Mid-Orange"), brings this action pursuant to 42 U.S.C. § 1983 against two dentists – defendants Kevin McGraw, D.M.D., Facility Director at Mid-Orange, and Michael Griffin, D.D.S., the former Regional Medical Director for the New York State Department of Correctional Services for the region covering Mid-Orange – alleging that defendants acted with deliberate indifference to Lewis's medical needs by failing to provide prompt and adequate treatment for alleged gum infections that Lewis feared could trigger a crisis of his sickle cell anemia condition. Defendants now move for summary judgment in their favor on the ground that Lewis's claims of deliberate indifference lack merit. Because Lewis has failed to respond to defendants' motion with any evidence countering defendants' statement of undisputed facts, and because those facts establish that defendants are entitled to judgment as a matter of law, the motion is granted.

**I.       Procedural History**

Defendants have moved for summary judgment following the conclusion of discovery proceedings in this action. Pursuant to Local Rule 56.2 and McPherson v. Coombe, 174 F.3d 276, 281 (2d Cir. 1999), the defendants' moving papers included a "Notice of Motion to Pro Se Plaintiff" explaining that Lewis's claims "may be dismissed without a trial" if he did not respond to defendants' motion. (Notice of Motion to Pro Se Plaintiff, at 1). Lewis did not respond, and out of an abundance of caution, the Court issued an order directing plaintiff to respond to defendants' motion by July 1, 2005. (See Order, dated May 31, 2005). In that Order, this Court expressly informed plaintiff that:

> If plaintiff fails to respond to defendants' motion for summary judgment on or before **July 1, 2005** with sworn affidavits or other documentary evidence contradicting the facts asserted by the defendants, the Court will accept the factual assertions included in defendants' Rule 56.1 Statement as true, and judgment may then be entered in defendants' favor without a trial.

(Order, dated May 31, 2005, at 2-3) (emphasis in original). Because Lewis failed to respond as directed – or at all – to defendants' motion for summary judgment or the Court's May 31, 2005 Order, the Court accepts the factual assertions in defendants' Local Civil Rule 56.1 Statement as true. See LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 211 (2d Cir. 2001).

**II.      Factual Background**

During all times relevant to this action, plaintiff Earl Lewis was an inmate incarcerated at the Mid-Orange Correctional Facility. (Defs.' Local Civil Rule 56.1 Statement ¶¶ 1, 3, n.1, ("Defs.' 56.1 Statement")). In May 2000, following the death of Dr. Stacey A. Pierce, defendant Kevin McGraw, D.M.D., became the Facility Director at Mid-Orange, and between 2000 and 2003, examined and treated Lewis for a variety of dental complaints. (Defs.' 56.1 Statement ¶ 19; Declaration of Dr. Kevin McGraw, dated April 6, 2005, at ¶¶ 3-4, ("McGraw Decl.");

Deposition of Earl Lewis, at 50, ("Lewis Depo."), Ex. B to Declaration of Jeb Harben, dated April 6, 2005, ("Harben Decl.")). During the relevant period, defendant Michael Griffin, D.D.S. served as the Regional Medical Director for the New York State Department of Correctional Services in the region including Mid-Orange. (Defs.' 56.1 Statement ¶ 3; Declaration of Dr. William Griffin, dated April 6, 2005, at ¶¶ 2-4 ("Griffin Decl.")). In that position, Griffin was responsible for supervising the work of the facilities' dental providers, including Dr. McGraw. (Griffin Decl., at ¶ 4).

Lewis claims that on two separate occasions – once in November 2000 and again in July 2001 – McGraw failed to treat purported gum infections promptly and adequately by failing to prescribe the antibiotic Clindamycin when requested, and that failure caused Lewis to suffer a "sickle cell crisis" on each occasion. (See Compl., at ¶¶ 13-19, 23-25). Lewis also charges McGraw with failing to review his medical records promptly in response to Lewis's complaints in November 2000 and with failing to respond promptly to his request for treatment in July 2001. (Id.). Lewis alleges that Dr. Griffin, who reviewed the grievances Lewis filed after each of these incidents, failed to direct McGraw to provide prompt and adequate treatment. (Id., at ¶¶ 34-36).

It is undisputed that Lewis suffers from sickle cell anemia, and throughout his life has, on occasion, suffered what he refers to as "sickle cell crises." (Defs.' 56.1 Statement ¶ 4; Lewis Depo., at 18). During his deposition, Lewis explained that in a sickle cell crisis – which can last for several days – he experiences pain in his limbs and fatigue and that a crisis can lead to significant organ failure. (Lewis Depo., at 49, 52-53). The severity of pain he experiences varies with each crisis, ranging from "dull" to "excruciating." (Id., at 19, 23). Lewis believes that these crises can be triggered by various things, including infections and fatigue. (Id., at 22). During his deposition, Lewis chronicled several "major" sickle cell crises that he suffered prior to his

3

incarceration at Mid-Orange, each of which required hospitalization, but he did not recall having experienced a crisis resulting from a dental infection. (Id., at 19, 23-28).

While incarcerated at Mid-Orange, Lewis sought treatment periodically from Dr. Stacey A. Pierce, Dr. McGraw's predecessor. On two occasions, in January 1999 and November 1999, Dr. Pierce prescribed Lewis the antibiotic Clindamycin to treat potential gum infections. (Defs.' Rule 56.1 Statement ¶ 18; Dental Records of Earl Lewis, at 120, 122, ("Dental Rec."), Ex. C to Harben Decl.). Lewis believed the antibiotics to be necessary to stave off a potential sickle cell crisis. (Lewis Depo., at 22, 97). The crux of Lewis's claims here is that when McGraw replaced Dr. Pierce at the Mid-Orange facility, he failed to treat Lewis's complaints of infections with the urgency they were due, and twice improperly refused to prescribe the antibiotic Clindamycin, even though Lewis informed McGraw on each occasion that Dr. Pierce had treated infections in the past with Clindamycin, and Lewis's concern that if left untreated, the infections would trigger a sickle cell crisis.

### A. The November 2000 Incident

On November 13, 2000, Lewis was seen by McGraw at the Mid-Orange dental clinic for the purpose of receiving two composite fillings. (Dental Rec., at 124). Following his treatment, Lewis complained of a gum infection and requested antibiotics. (Id.). He also sent McGraw a memorandum complaining of a gum infection, noting that he suffers from sickle cell anemia, and stating his belief that a sickle cell crisis could be triggered by infection. (Id. at 139). Lewis noted that in the past, Pierce had prescribed Clindamycin to combat gum infections, and that had corrected the problem. (Id.). McGraw responded to Lewis, explaining that he did not see an infection at that time, but that he was familiar with sickle cell anemia and would respond to the

4

request for antibiotics after he had reviewed the medical records to determine "what was done and why." (McGraw Decl. ¶ 9; Dental Rec., at 124).

Lewis claims that both the next day and the day after, he contacted the dental clinic to inquire whether McGraw had reviewed his records, and was told that McGraw had not; then, on November 16 – three days after he requested the antibiotics – Lewis experienced a sickle cell crisis that affected his arms and legs and threatened to cause deterioration of his internal organs. (Lewis Depo. at 69-70). Lewis received Tylenol from the Mid-Orange medical facility, but stated that he still suffered from pain throughout the night for approximately four days. (Id., at 70-72). Lewis did not, however, complain to anyone at the dental clinic that he was suffering from a sickle cell crisis. (Defs.' 56.1 Statement ¶ 36; Dental Rec., at 135, 139, 141, 142, 144, 147). During the four days Lewis claims to have suffered the crisis, he continued working at his prison job as a porter, and was not admitted to the infirmary; there is no evidence that Lewis suffered any injury whatsoever as a result of the crisis. (Defs.' 56.1 Statement ¶ 66; Lewis Depo., at 71-72, 96).

Lewis was next examined by Dr. McGraw on November 20 when he returned to the dental clinic to have more work done on his fillings. (Defs.' 56.1 Statement ¶ 32; Dental Rec. at 124). Lewis once again requested Clindamycin, but McGraw explained that antibiotics were not indicated because he saw no evidence of infection. (Defs.' 56.1 Statement ¶¶ 33-35; Dental Rec., at 124). McGraw made the following notations in Lewis's dental chart: November 13: "I do not see an infection"; and November 20: "Advise patient I do not see any infection, no bleeding and prescribing an antibiotic is not yet indicated." (Dental Rec., at 124).

One week later – on November 27 – Lewis filed a grievance complaining that he had suffered a sickle cell crisis as a result of McGraw's failure to review his dental records in a

5

timely manner and to prescribe antibiotics. (Certification of Plaintiff's Grievances ("Grievance Hist."), Ex. E to Harben Decl.; History and Record of Plaintiff's Grievance Number MO-7373-00 ("Grievance MO-7373-00"), Ex. F to Harben Decl.). In the grievance, Lewis requested that in the future he be provided appropriate medication, that an investigation be conducted as to why McGraw denied him the antibiotic, and that he be compensated for pain and suffering. (See Grievance MO-7373-00, at 219-20).

The grievance was reviewed by four members of the Inmate Grievance Review Committee ("IGRC"); two members recommended that an investigation be conducted, and that Lewis "be issued an antibiotic when and as needed"; the other two members found that McGraw had acted appropriately. (See id. at 219). Henry Garvin, the Superintendent of Mid-Orange, upheld the latter determination and denied the grievance. (Id. at 219, 221). Lewis appealed to the Central Office Review Committee ("CORC"), which agreed that McGraw had acted appropriately but directed that Lewis "be scheduled to meet with…[Griffin] to discuss his concerns." (Id. at 216, 226). Lewis and Dr. Griffin met, Griffin investigated the claims, and determined that McGraw's treatment of Lewis reflected an appropriate exercise of his medical judgment. (Griffin Decl. ¶¶ 9-10, 12).

### B. The July 2001 Incident

The second incident Lewis complains of began approximately eight months later – on July 9, 2001 – when Lewis sent a memorandum to McGraw stating that he was suffering from another gum infection, that he feared a sickle cell crisis, that Dr. Pierce had treated similar infections by prescribing Clindamycin, and that time was of the essence. (Dental Rec. at 149). McGraw scheduled Lewis for an examination for two days later. (Defs.' 56.1 Statement ¶ 46; Dental Rec. at 125, 150). Lewis, however, was on outside medical trips between July 10 and

6

July 18 and was unable to keep the appointment. (Defs.' 56.1 Statement ¶¶ 46-47, 56; History and Record of Plaintiff's Grievance Number MO-7524-01 ("Grievance MO-7524-01"), Ex. H to Harben Decl.). The next week - July 20 through July 25 – Dr. McGraw was on vacation, and thus did not examine Lewis again until July 27. (Defs.' 56.1 Statement ¶ 56; Dental Rec. at 125, 127).

Lewis claims that he again suffered a sickle cell crisis on July 13, 2001. (Defs.' 56.1 Statement ¶ 53; Medical Records of Earl Lewis ("Med. Rec."), Ex. D to Harben Decl.). On July 17 Lewis sent an additional memorandum to the dental department, but he made no mention of the alleged crisis. (Defs.' 56.1 Statement ¶ 52; Dental Rec., at 151). A note dated July 13 in Lewis's medical records reflects that during a visit to the medical facility he had complained of a sickle cell crisis, but there is no indication of any treatment being prescribed. (Defs.' 56.1 Statement ¶ 53; Med. Rec., at 162). On July 27 Lewis was examined by McGraw and x-rays were taken that revealed certain dental problems. (Defs.' 56.1 Statement ¶ 49; Dental Rec., at 125, 127). McGraw informed Lewis of the results of the x-rays and recommended extraction of a decayed tooth. (Dental Rec., at 125). Lewis refused the extraction, but again requested a prescription for antibiotics. (Id., at 125, 127). McGraw denied that request, finding no indication of infection. (Id.; McGraw Decl. ¶¶ 10-11; Griffin Decl. ¶¶ 7-10).

Following this second incident, Lewis again filed a grievance asserting that Dr. McGraw had deliberately delayed in responding to his complaint of a gum infection, possibly in retaliation for his earlier complaint.[1] (Defs.' 56.1 Statement ¶ 62; Grievance MO-7524-01, at 243-45). The IGRC conducted an investigation and its members unanimously recommended that due to Lewis's underlying medical condition, he should be seen by a dentist "within a reasonable amount of time." (Grievance MO-7524-01, at 243). The superintendent reviewed that

---

[1] Lewis does not renew his claim of retaliation in this action.

recommendation, and determined that Lewis had been seen "at the earliest opportunity." (Id.). Lewis appealed the superintendent's conclusion to CORC, asserting that when a sickle cell crisis is threatened, preventative measures should be taken, and he should have been seen more timely. (Id. at 243-44). Lewis requested that in the future he not be required to wait three to four weeks to be seen. (Id. at 240). CORC reviewed the request, noted that emergency dental requests are routinely evaluated within 24 hours or the next business day, and referred the matter to Dr. Griffin, the Regional Dental Director for review of Lewis's dental records and "[a]ny action necessary." (Id. at 240, 248). Dr. Griffin met with Lewis to discuss his grievance, and found that Lewis had been on outside medical trips "during the first 24 hours of the supposed emergency," and that he refused treatment when he was seen on July 27. (Id. at 249). Dr. Griffin concluded that McGraw had acted properly with respect to treating Lewis. (Griffin Decl., at ¶¶ 9, 12).

Although the record is clear that McGraw refused Lewis's requests for Clindamycin in November 2000 and July 2001, and that there was a delay between his complaint of an infection on July 9, 2001 and his next examination on July 27, 2001, McGraw disputes that his refusal to prescribe the requested antibiotics on either occasion departed from medically appropriate procedures or that any delay exhibited deliberate indifference to Lewis's medical or dental needs. McGraw had, in fact, prescribed Clindamycin to Lewis on various occasions, both prior to and after the incidents in question, when McGraw had observed signs of infection. (Defs.' 56.1 Statement ¶ 21; Dental Rec., at 123, 127, 153).

In May 2000 – prior to the first alleged incident – Lewis underwent oral surgery at a separate facility and McGraw conducted a post-operative examination, reviewed Lewis's dental chart, and noted that his medical history included sickle cell anemia. (Defs.' 56.1 Statement ¶

8

21; Dental Rec., at 123). McGraw diagnosed Lewis at that time with some inflammation and bleeding of his gums and had prescribed Clindamycin. (Id.). Similarly, when, on September 13, 2001 – after the second alleged incident – Lewis sought dental care for pain he was experiencing in his jaw, McGraw found an infection and had again prescribed Clindamycin. (Id., at 127, 153). Lewis does not allege any inadequacy or indifference in McGraw's examinations or treatments on those occasions.

The claims against Griffin, who provided no direct treatment to Lewis, are based solely on his supervisory role as the Regional Medical Director for the region and his allegedly inadequate responses to Lewis's grievances. (Lewis Depo., at 84-87; Compl. ¶¶ 34-36). As noted, in response to each grievance, the CORC directed that Lewis's concerns be heard by Dr. Griffin, the Regional Dental Director, who investigated each complaint and concluded that Dr. McGraw had provided appropriate treatment in November 2000 and July 2001. (See Grievance MO-7524-01, at 249; Griffin Decl. ¶¶ 8-10, 12).

### III. Discussion

#### A. The Summary Judgment Standard

Summary judgment will be granted only when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir.1995). To survive a summary judgment motion, the non-moving party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing

9

that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation omitted); Fed.R.Civ.P. 56(e).

In deciding the motion, the court "'must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993)). Where a party is proceeding pro se, a Court must read the pro se litigant's supporting papers liberally and interpret them "'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). The application of this liberal standard does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation omitted). In this instance, because Lewis failed to respond at all to defendants' motion following explicit notice by the Court as well as by defendants, the Court accepts as true the factual assertions set forth in defendants' Local Civil Rule 56.1 Statement of Undisputed Facts.

Defendants assert several bases for dismissal on summary judgment, including that: (1) Lewis has failed to raise any genuine issue of material fact on his claims of deliberate indifference; (2) Lewis failed to exhaust his administrative remedies before bringing his claims against Griffin; (3) defendants are entitled to qualified immunity; and (4) the Eleventh Amendment to the U.S. Constitution bars any claim that Lewis might assert for money damages against defendants in their official capacities.

Defendants are correct insofar as they contend that any claim for money damages against defendants in their official capacities is barred by the Eleventh Amendment. See Davis v. New

York, 316 F.3d 93, 101-02 (2d Cir. 2002) (citing Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). As is not uncommon, Lewis, a pro se plaintiff, has not specified whether he is suing defendants in their official or individual capacities. Because Lewis seeks only money damages, the Court assumes he sues defendants in their individual capacities, a claim not barred by the Eleventh Amendment. See Davis, 316 F.3d at 101-02; Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252 (2d Cir.1991). The claims against defendants in their individual capacities fail because Lewis has not adduced evidence to create any genuine issue of material fact supporting his claim that defendants violated his Eighth Amendment rights as set forth below. Accordingly, the Court need not consider whether defendants would have enjoyed qualified immunity had a violation been established.

As recounted above, Lewis submitted grievances complaining about McGraw's treatment, and appealed the denials of those grievances, but as defendants note, Lewis did not submit any grievances complaining of Griffin's actions. Defendants seek dismissal of the claims against Griffin and McGraw on the ground that Lewis failed to exhaust the grievance process for his claims against Griffin, who reviewed each grievance at the direction of CORC. Because the Court finds that Lewis's claims fail on their merits, it does not address whether or not he exhausted his administrative remedies prior to bringing suit. See Richardson v. Goord, 347 F.3d 431, 433 (2d Cir. 2003) ("failure to exhaust administrative remedies is not a jurisdictional predicate").

### B. The Eighth Amendment Deliberate Indifference Standard

In order for a claim of inadequate medical care to reach the level of an Eighth Amendment violation, a prisoner must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Chance v.

11

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). The deliberate indifference standard consists of both an objective and a subjective component. Chance, 143 F.3d at 702. To meet the objective component, a plaintiff must establish that the alleged deprivation is "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 297-303, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), and for the subjective component, a plaintiff must show that a defendant acted with a "'sufficiently culpable state of mind.'" Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Wilson, 501 U.S. at 297). Deliberate indifference exists only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The "sufficiently serious" requirement "'contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)). The Eighth Amendment also forbids "less serious denials" of medical treatment "which cause or perpetuate pain." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) (quoting Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977)). The U.S. Court of Appeals for the Second Circuit has identified several factors that are "highly relevant" to the inquiry into the seriousness of a medical condition: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance, 143 F.3d at 702 (2d. Cir. 1998) (citation omitted). "[D]ental conditions (like other medical conditions) vary in severity and [] a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000).

A prisoner does not state a violation of the Eighth Amendment with every claim that he has not received adequate medical treatment. Estelle, 429 U.S. at 105. Merely negligent treatment or a claim based on legitimate differences of opinion over matters of medical judgment are insufficient to state an Eighth Amendment claim. Estelle, 429 U.S. at 105-06. Rather, to establish deliberate indifference, Lewis must demonstrate that defendants acted with "'a conscious disregard of a substantial risk of serious harm.'" Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005), (quoting Chance, 143 F.3d at 703).

## IV.  Analysis

Lewis alleges that McGraw improperly denied medical treatment in November 2000, and failed to provide adequate and timely medical attention in July 2001, and that Griffin failed to take corrective action following Lewis's complaints. Defendants contend they are entitled to summary judgment on all claims because Lewis has failed to come forward with evidence to meet either the objective or subjective component of the deliberate indifference standard in regard to either alleged incidence of inadequate treatment. The Court agrees.

### A. Serious Medical Condition

It is undisputed that Lewis suffers from sickle cell anemia, and the Court accepts that sickle cell anemia and the type of crises that Lewis describes – those involving a risk of organ deterioration and failure – may be the type of serious medical condition toward which deliberate indifference could constitute a constitutional violation. However, as defendants note, Lewis, by his own admission, did not suffer from a crisis during the relevant period that was more than "medium" or that caused any significant interruption in his daily activities. (Defs.' 56.1

13

Statement ¶¶ 38-41, 61; Lewis Depo., at 71, 68, 47-49, 51-52, 69-73). While Lewis alleges that he experienced pain during each of the relevant alleged sickle cell crises, the pain neither prevented him from continuing to work as a porter nor did it interfere with any other daily activity. (Defs.' 56.1 Statement. ¶ 8; Lewis Depo., at 47-49, 51-52, 69-73). There is no evidence suggesting that Lewis suffered any deterioration of his organs from the two alleged crises. The "assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." See Inciarte v. Spears, No. 97 Civ. 3155, 1998 WL 190279, at * 3 (S.D.N.Y. Apr. 20, 1998). Moreover, the record provides no evidence to substantiate his disagreement with McGraw's recorded diagnoses that he did not in fact suffer from the gum infections in November 2000 or July 2001 that he contends triggered the sickle cell crises. (McGraw Decl. at ¶¶ 10-12; Dental Rec. at 124).

In sum, Lewis has failed to present any competent evidence to support a finding that he suffered from the kind of serious medical condition that is a predicate to establishing a violation of his Eighth Amendment rights.

### B. Deliberate Indifference

Lewis has also failed to adduce any evidence whatsoever that the defendants acted with the requisite subjective deliberate indifference. Specifically, the record contains no evidence to support a finding that either Dr. McGraw or Dr. Griffin knew of and disregarded "an excessive risk" to Lewis's health or that either defendant failed to prescribe an appropriate course of treatment. See Farmer, 511 U.S. at 837. Importantly, the record includes no evidence supporting a finding that either McGraw or Griffin knew that a failure to prescribe antibiotics immediately upon request from Lewis on November 13, 2000 or July 9, 2001 would result in a sickle cell crisis, but nonetheless refused to prescribe necessary treatment for Lewis's alleged

infections. First, as noted above, Lewis has come forward with no competent evidence to refute McGraw's diagnosis that Lewis was not even suffering from a gum infection in either November 2000 or July 2001. Even accepting Lewis's assertion that a gum infection could trigger a sickle cell crisis, Lewis has not demonstrated that McGraw deliberately ignored that risk by refusing to prescribe a course of treatment not indicated by his own examination of Lewis. (See McGraw Decl. ¶¶ 9-11, 13; Dental Rec., at 124-25, 127). Evidence establishing that Dr. Pierce had previously prescribed antibiotics provides no basis for determining that McGraw acted inappropriately, much less recklessly, in refusing to prescribe antibiotics when no infection was apparent.

The evidence showing that McGraw had prescribed Clindamycin on other occasions – both prior to and following the dates relevant to the complaint – belies any allegation that McGraw deliberately denied that treatment on the dates in question. (Defs.' 56.1 Statement ¶¶ 26-28, 43; Dental Rec. at 123-25). When McGraw saw no infection, he declined to prescribe antibiotics. (Dental Rec. at 124). In fact, McGraw explains that "[e]xcessive use of antibiotics, particularly where there is no infection to treat, could diminish the drug's effectiveness for when there actually is an infection." (McGraw Decl. ¶ 11; see also Griffin Decl. ¶ 10). This type of decision regarding choice of treatment is "purely an issue of medical judgment… [which] is precisely the sort of issue that cannot form the basis of a deliberate indifference claim." Hernandez, 341 F.3d at 146-147; Chance, 143 F.3d at 703

Neither does the delay between Lewis's complaint of another infection on July 9, 2001, and his next examination on July 27, 2001, reflect any deliberate indifference by defendants. The record demonstrates that that delay was due to circumstances outside McGraw's control and gives no indication that McGraw acted deliberately, or even negligently. Lewis sent his

memorandum to McGraw on July 9, 2001, and McGraw scheduled him for an appointment on July 11, 2001; although circumstances made that appointment impossible to keep, McGraw examined Lewis on the next available date on which both Lewis and McGraw were at the facility. (Defs.' 56.1 Statement ¶ 46; Dental Rec. at 125, 149).

This is not a case where defendants refused to treat an observed condition, failed to provide prescribed treatment, or unreasonably delayed in responding to Lewis's complaints. See Hernandez, 341 F.3d at 146-47. Rather, this is a case where Lewis, without supporting medical evidence, diagnosed himself with an infection and believed a certain treatment was necessary. Lewis has offered no evidence, however, that McGraw's refusal to prescribe antibiotics in the absence of an infection deviated from reasonable medical practice, much less that McGraw was aware that his treatment of Lewis was medically inadequate and he deliberately ignored a serious risk to Lewis's health. Id.

Just as the record demonstrates that McGraw did not act with deliberate indifference, there is no evidence supporting Lewis's claims that Griffin deliberately ignored any inadequacies in McGraw's responses or was indifferent to his complaints. Griffin reviewed the grievances, but found that McGraw properly exercised his medical judgment and neither intentionally nor negligently delayed providing appropriate treatment. (Griffin Decl. ¶¶ 8-11). Griffin's responses to those grievances evince no failure to remedy a wrong or failure to act on information indicating unconstitutional acts were occurring that could give rise to liability on his part. See Hernandez, 341 F.3d at 145.

## V.  Conclusion

Because no reasonable jury could find that Lewis suffered from a sufficiently serious condition or that defendants acted with deliberate indifference either in November 2000 or July

2001, his claims fail as a matter of law. Accordingly, defendants' motion for summary judgment is granted and the Clerk of Court is directed to enter judgment in defendants' favor.

Dated: New York, New York
November 14, 2005

SO ORDERED:

Sidney H. Stein, U.S.D.J.